Please be seated. Your Honor, this is the second case of the morning. Call 217-0553. People of the State of Illinois v. Nicole Martinez On behalf of Ms. Martinez, Ms. Shade E. Edwards On behalf of the people, Ms. Stephanie H. Kee Ms. Edwards Good morning, Your Honor. May it please the Court. My name is Shade Edwards, and I represent Defendant Appellate Nicole Martinez. Nicole was convicted of attempted murder of Elena Mora. Now, we're raising two issues on appeal, one being the denial of Nicole's motion to suppress statements and the prosecutor's rebuttal argument. Today, I will focus my argument on the first issue, the motion to suppress statements, and will rely on the arguments in the briefs as to the rebuttal. Now, the trial court erred in denying Nicole's motion to suppress statements, where Nicole unequivocally invokes her right to counsel by stating, I think I should speak with an attorney, and where the detective, despite learning of this invocation, re-initiated the interrogation. Now, to clarify, after she made the statement, I think I should speak with an attorney, she made recorded and unrecorded statements to the detective, and we are seeking to have both recorded and non-recorded statements made to him excluded. Now, to provide the context for this statement. The State kind of argues in their briefs in the trial court that the statement was ambiguous and the police were entitled to find out whether or not she really wanted counsel. I'm summarizing your argument. Is there any merit to that argument? That they were entitled to? That her statement was ambiguous, that it was not a true request for counsel at that time. It was a true request at that time, given the context in which it was made. The detective did state that he thought it was ambiguous and that he attempted to clarify in some way. However, his attempt to clarify was merely, apparently, merely giving her the Miranda form and having her sign it and re-initiating that interrogation to clarify what he would just be. Did you want an attorney or not? That didn't happen here. The State argues that, in their brief, that accepting your argument that the statement should have been suppressed, that it's harmless error because the evidence of the events killed as to her attempt to kill was overwhelming. How do you respond to that? As to that argument, I contend that confessions carry extreme probative weight. There's strong evidence. And here, it was strong evidence, direct evidence of her attempt to kill. Aside from that, they only had circumstantial evidence. Well, they had her statements, though, during the attack when the victim says to her, I don't want to die, and the defendant continues to attack her and makes the statement, oh, you don't want to die. She's dressed in disguise. She's got a mask, a hoodie, rubber gloves, a scalpel, and an X-Acto knife or a box cutter. I mean, she is, quote-unquote, dressed to kill, literally. And then she makes that rhetorical, oh, you don't want to die, as she is slicing and dicing the victim. How could the jury have possibly concluded that she had some intent other than to kill? Well, again, this is still not, despite all that, again, circumstantial evidence to her intent to kill. Her statements are direct evidence, aren't they? Oh, you don't want to die, I don't think that is the same as saying, as she did in her confession, I flat out wanted to kill her. I think that's distinctive here. And even so, because they do carry strong weight, the admission of unlawfully obtained confessions is rarely harmless error. And this is not one of those rare circumstances. Again, it was compelling evidence of her intent to kill. This is shown by the state's closing argument, which honed in on her confession, and basically put her confession against her testimony, which was the only other direct evidence of her intent to kill. They completely clashed, and it was completely contradicted. And I would also note that since it is rarely harmless error, it's not harmless here, especially since it wasn't harmless in EQUIDEL, spelled E-I-C-H-W-E-D-E-L. In that case, the unlawfully obtained confession was admitted at the defendant's murder trial. And I believe they were also charged for solicitation of murder. Besides the confession, other evidence was introduced, such as the defendant's statement that they wished death upon the victim, that the defendant took out an insurance policy on the victim prior to the victim's death, that the defendant solicited others to kill the defendant, and that the defendant made checks out to the one that they ultimately got to do the murder. Even with all that evidence, the court still found that the confession was not harmless there and is not harmless here. What page of your brief is EQUIDEL cited at? 16 and 18. Yes, it's the first district case, I believe. There is one other factor also that would, again, it would be circumstantial evidence, but to show her intent, and that was that the attack only actually stopped after I think it was the son-in-law or somebody came and dragged her off of the victim, right, and put her in a chokehold to get her to stop. Isn't that correct? Yes. Which is pretty compelling circumstantial evidence. It could also go to her intent to attack, which is what she testified to. It was the defense theory that she did not intend to kill her. She only intended to scare her and, unfortunately, attack her. Well, that was kind of blown out by the fact that she struck her in the face with a stone, a rock. If she didn't intend to kill her, why would she hit her in the face with a rock? I'm unsure why she would hit her with a rock. I know that to every argument you make, then, there's another fact, as Justice Spence pointed out, that is contradictory, that all of the evidence collectively, including her statements, all lead to one conclusion, not her confession, but that she was there to kill him. I think it could also lend itself to another conclusion, that she intended to scare her, that she intended to attack her. So I think without her confession, it could have went either way, especially considering that at the time of this attack, this alert attack, she was sleep-deprived and overworked and just apparently not in the right mind to form that intent. At least that was the defense position. Well, that sounds like an insanity defense more than a defense to lack of intent to commit murder. I'm not following your argument. Well, I believe it was the defense... The fact that you're under stress really is not relevant to whether or not you intend to kill somebody, does it? Unless it relates to competency. If you are competent, no amount of stress is going to exonerate, compromise, or explain away your intent to murder someone. It only is relevant material if you establish that the defendant no longer knows right from wrong or has an uncontrollable desire, et cetera. So I'm not having an easy time conceptualizing why stress has anything to do with intent to murder unless it relates to the insanity defense. And surely guilty but mentally ill wasn't involved here, so... On a slightly different point, how close were the cuts or the punctures to the carotid arteries or carotid artery in the woman's throat? How close were they to the carotid artery? She had slight cuts on both sides of her neck. But they were very slight from the pictures. But even so... Were there defensive cuts or wounds on the victim's hands or arms? Excuse me, sorry, can you... Were there... Did the victim attempt to fend off the attack by using her hands as a shield and in the process there were cuts, lacerations, whatever, on the victim's hands? I don't recall if there were any cuts on the victim's hands, but the victim did fight back. She did fight back until the defendant was pulled off of her, correct? Yes. But notwithstanding all that other evidence, that, again, circumstantial evidence, the confession was so strong here that the State framed it not as her statement corroborating all the other independent evidence, but rather all the other independent evidence corroborated her confession, and that was because, again, the confession completely contradicted her testimony as to her intent, her specific intent. And I would note that in determining whether a constitutional error is harmless, the focus should be upon the character and quality of the legally obtained evidence as it relates to the other evidence here. And all the other evidence was focused to corroborate her confession, which was the central evidence to the State's case, which is why it was not harmless error here. And if there are no further questions? Anything else? No. Thank you. You'll have time for another one. Thank you. Thank you. We would ask that this Honorable Court reverse her conviction and remand for a new trial where her non-recorded and recorded statements to the detective are excluded. Thank you. Thank you. Ms. Lee. May it please the Court? Absolutely. The first thing I would like to say is that, with all due respect, the actual statement that the defendant had made was, I think I want a lawyer, not I want to speak to a lawyer. It was, I think I want a lawyer.  It was, I thought it was, I think I want a lawyer. Okay. Well, how does either one? Because the point was that you had a detective. The first officer on the scene was a patrol officer who was not experienced in the same way in terms of the interviewing. It wasn't a detective. He heard the statement. Before he heard the statement, though, he actually heard, I attacked her with her hands out ready to be cuffed. And he also heard that it was based on the motive of, you know, the victim was having an affair with my husband. It was just too much. So all of that came out even before. And when the officer, talking about the officer during the initial interview, Officer Sullivan, I believe, correct? Yes. She made a few statements, said I attacked her. She was in a disguise, rubber gloves. She had a clear motive. But then in response to one of his questions, she said, I think I should speak to an attorney. And then he stopped questioning her, correct? Yeah. I think she said, I think I want a lawyer. He did stop questioning her. But his job really was to get her over to the station. He wasn't as experienced. We've got all these cases where even the experts can't agree on what is or is not ambiguous. So we have. I'm sorry. I need to inquire. If it wasn't his job, then why did he ask any questions and why did he give him a random warning? Well, he was trying to assess the scene. And obviously, if she was going to give a statement, that would be a good. Is there any case authority that suggests that there's a hierarchy of agents and that certain police officers who aren't detectives or commanders or sergeants or corporals, or maybe even privates, don't have the authority to give out Miranda rights? And when they do and they are exercised, that this is a nullity? I don't think there's any case law specifically like that. But what there is case law is that says that an officer, if they're not sure, can clarify. Doesn't that usually, though, relate to a defendant who says, maybe I should have a lawyer, or maybe I need to talk to an attorney, or maybe, you know, where there's a qualifying statement like that? Isn't that usually the case, though? Usually, but most of the ones where they actually found it unambiguous were they said, I would like the lawyer before I speak to you. This didn't have that. It was, I think I want a lawyer, nothing about before I speak to you. Well, it would have to be then that the word think is the qualifier. Is that right? It is a qualifier. And so that everything would depend on then what that person meant by saying, I think. Right. And also whether they want the lawyer now before they speak. A lot of the, like in Davis, it was maybe I should talk to a lawyer. I think, as counsel had pointed out, at some point, it's dicta really, but at some point later, the defendant said, I want, I think I want a lawyer before I talk. Most of the ones where they find it unambiguous, you'll find that they actually say before I speak. The other thing is when detectives. What if the defendant just says, hey, I want a lawyer? It's not before I speak. It's not, I think. What if he just says, hey, I want a lawyer? I think that they would be allowed to clarify. And in fact, under Davis, it says it's prudent to clarify. I mean, that seems like a pretty straight up statement, doesn't it? Where a defendant would just say, I want a lawyer. Right. What would there be to clarify? I don't get it. Whether you want a lawyer right this minute. Before you speak. Well, what was the, what was the clarification conversation? My recollection was he said, you mentioned something about a lawyer. That's certainly your right. But I wanted to clarify that. And so then he did give the Miranda, and then she agreed to speak. She said, it doesn't matter anymore now. And she spoke. And that was the clarification question. When you have somebody who says. But you would agree, you would agree, if it was unambiguous, if we interpret it as an unambiguous, then you can't even go back in and try to clarify. You essentially have to wait and see whether or not the defendant initiates. Or you move on with the investigation. You don't go back in and say, hey, I heard you made some comment about a lawyer. What did you mean by that? Right. If you find that it is. Would you agree that that is an improper method? I agree that if you, if the court finds that it is in fact clear and unambiguous, which obviously the trial court did not agree with that. The, that yes. I mean, he should not, Detective Nachman should not have tried to clarify. But then we would get into the harmless error, which you had discussed during the opening argument. And I do think, I understand that rarely is a confession harmless error. But in this case, you have the first confession of I attacked her looking to be handcuffed. She then said her motive was that she was having an affair and it was too much. She kind of, even during her own testimony, she actually talked about that she had done what she could. She tried to call INS on the woman. If the defendant's theory that she was just intending to scare her, then why would the person who intends to scare her disguise herself if she only wanted to scare her? In other words, she was trying to deter the victim from having this relationship with her husband. She'd want the victim to know who she was, right? Right. I fully agree with that. She wouldn't have showed up at maybe 2.30 in the morning and hid until she saw the victim pull in. She snuck up on her and surprised her with a rock until she fell down. She stabbed her twice in the neck with the box cutter. Sounds like she tried to originally use a scalpel. It fell. All of those facts do, and the two pairs of gloves, the extra clothes, the fact that she walked over there instead of drove so her car wouldn't be there. She didn't have any identification or cell phone with her. All of these things suggest that, and she had time while she was waiting for the victim to return to maybe reconsider these actions too, and she continued with her plan. As far as you'd ask about the defensiveness, I believe it would be 416 to 417 in the record. The victim had testified that she only had the marks to her neck and some scratches, that she didn't really have any to the rest of her body, so I believe that's the answer to that question. I don't know that she would have had time. In fact, the victim's daughter tried to get her off and couldn't. It took the victim's daughter's boyfriend to actually toehold and pull her off. If they hadn't been there, what would have stopped this? Nothing, because she did not stop until she was physically pulled off by a male in a toehold. I think that all of those things show not intending to scare. She brought all her supplies with her, and of course, you do have a confession. Obviously, if that were to be removed, I do think that there is still overwhelming evidence. Without the taped confession, you still have the initial confession that she attacked her and also the motive for doing so, plus all of the circumstantial evidence. I do think in this case, too, because they're not disputing the voluntariness of the confession, they're only disputing the Miranda part of it, the prophylactic purpose of Miranda is not defeated here when he went in to clarify. Because he said, you have that right. You can have the attorney if that's what you want. But I wasn't sure. And the trial court, I know it's an objective determination, but the trial court at least heard this officer testify and did believe that he was credible that he didn't know. Does the Miranda warning contain a timeline in which a suspect is to indicate within minutes, hours, or days when they would expect an attorney if they made a request? Because if I understand your argument correctly, the Miranda warnings do not tell a suspect. You may request an attorney, but you must indicate that you request an instanter or within the next two or three seconds or five minutes, and we will obtain one for you. There's nothing in the Miranda warnings that has this qualification which you claim creates an ambiguity. So either you're making this out of full cloth, or you must have some authority to suggest that the lack of a qualification that is not set forth in Miranda, supposedly through some sort of grammatical logic, creates an ambiguity? The I think created part of the ambiguity, plus you have Detective Nachman himself did not actually hear it, so he wanted to know. He didn't hear a tonation. He didn't see what she said or how she said it. What the cases do say is when they find it unequivocal, they all say that they want the lawyer before they speak or before they talk to you or now. And so instead of saying, did you tell the police officer that I think I want to speak with an attorney, he clarified the issue by giving Miranda warnings all over without the qualification which you claim created an ambiguity a second time. What she said was I think I want a lawyer, not I think I want to speak to a lawyer. She wanted a lawyer. Officer Sullivan did not say he found it clear and unambiguous. He said he stopped. That's all he said. He did stop, and then Detective Nachman obviously did go back in. But like I said, I think even if you were to find this clear and unambiguous statement, we still actually have overwhelming evidence beyond a reasonable doubt. Could you indicate to me what you think distinguishes what took place as being intent to kill or murder vis-a-vis intent to commit egregious bodily harm? Egregious bodily harm would be a lesser included, and in fact the jury was instructed to that effect. And I'm asking you to tell me what the facts are in this case that would distinguish between the jury finding aggravated battery vis-a-vis intent to kill. Surprising and hitting with a rock and then stabbing in the neck so that there is absolutely no chance to fight back, and in fact having to be pulled off physically before it stops is what tells me that this was in fact an intent to kill. And then also saying she was having this affair and it was too much, you know, I couldn't take it. Couldn't take it anymore. Yeah. Also, I don't know if the court wants me to address argument two about the life circumstances, but mostly as to that, the defense attorney had said, now she's entitled to you looking at that evidence to determine whether that gives you reasonable doubt. And she's entitled to it not just because the law says she is, but she's entitled to it also because of the life that she led up to September 26, 2014, and the life she led after that day. If that's not asking for special treatment under the law, I don't know what is. So the fact of the matter is they were asking to consider her the fact that she works seven days a week, the fact that she is older, the fact that she has kids, the fact that she never had committed these crimes. Obviously, those should be more sentencing questions, if anything, I think. So how does that ‑‑ I'm not sure I understand. How does that justify, even if you're trying to answer that argument, how does that justify making the statement that this was attempted murder if the same facts had been committed, not by a 40‑year‑old woman in Sycamore, but by a 20‑year‑old man on the south side of Chicago? I'm not seeing the correlation there. Because they might have lived ‑‑ they would have lived a different life, obviously, up until that point. Why is she more entitled than anybody else to them looking at reasonable doubt? Because she's a suburban or rural resident as opposed to an urban resident? It just doesn't really connect. I don't think that she is. I think an analogy might be if you had, say, a domestic battery where the male was the victim, which is more maybe unusual, and then you wanted to point out that he is entitled to the same protection under the law. We had already ‑‑ That I can understand. I'm just not so sure I see the connection here. Well, I think that ‑‑ first of all, I don't think that inherently addressed race. It probably addressed different circumstances on the south side of Chicago.  But I also would ‑‑ to that, I would remind the court that the jurors were specifically instructed that sympathy and prejudice shouldn't be influenced and they should not be influenced by race or gender. I think that that's really what the state was trying to point out, is you can't consider these things. So that is a correct statement of law.  Ms. Edwards at the bottom. I would start out by clarifying that the statement was, I think I should speak with an attorney. And that statement was made after the officer asked a second incriminating question. The first one ‑‑ The second. I'm sorry, the second what? Incriminating question.  The second one, she answered. The third one is where she didn't answer. And that was when he asked, how long have you been here? Yes. And she said, instead of answering, I think I should speak with an attorney. And in addition to that, the officer stopped questioning immediately after. Although in the suppression hearing, he didn't state that he believed that it was an invocation, he did not deny it either. In fact, he effectively gave a non‑answer. Do you believe this was a clear invocation or something to that effect? The officer said, I stopped talking to her. It was a yes or no question. And it was clear that he relayed that invocation to the detective. Yes. So, in other words, he did not, in sharing that information with the detective, he didn't say, I don't know what she meant by that, did he? He did not. And his status as an officer rather than a detective is not relevant for this inquiry. He was still law enforcement with the authority to ask incriminating questions, which is what happened here. And her use of the word forward, I think, that is just merely stating a position, belief, a decision. It's typically used as a polite way to convey one's position. It's used to sound less forceful, rude, or direct. However, even though it may have been timid, that does not render it ambiguous or indecisive. It was clear what she wanted. And to give a hypothetical to that effect, if one is at a restaurant and they say, I think I'll have the chicken, it's completely clear that that's what they're ordering. With regard to the parmoseur, and you gave us the argument that the defendant made a trial that she didn't have an intent to kill, she just wanted to scare the victim. Well, what would be the purpose of a disguise if you wanted to scare the victim, for example, scare the victim away from your husband and this relationship? Why would she wear a disguise if that was her motive? Well... And gloves and the extra clothing and all of the other circumstances, they just don't match up with that theory that she just intended to scare her, do they? I think those facts could lend themselves to a different inference. For example, I believe it was 40 degrees that night. It was cold. That would explain why she had on two clothes, gloves. But if she really intended to kill this person, why did she bring absorbent pads to help bleed? Why did she help her after the fact? Why did she make a statement to the effect that, oh, she's going to be okay? Or why did she tell the victim, you're going to be okay? As for the disguise, a crime was about to be committed. Perhaps that would explain it. I'm not sure, but either way. What I'm trying to find out is how could the jury have arrived at any other verdict, excepting the argument that the confession doesn't come in, the second confession? How could the jury have arrived at a conclusion that she only intended to scare the victim, when you have all of this evidence that there was a clear intent, circumstantial evidence and the statement evidence, but there's no evidence other than she intended to continue this attack until the victim was dead. She stopped in the middle of the action. She resists the attempt from the victim's daughter, and then she's pulled off by a man. It just doesn't make sense. Well, many fights or physical altercations need to be interfered with, or the persons involved need to be pulled away. That happens fairly often. But I think that circumstantial evidence could also lead to the inference that she was attempting to egregiously harm the victim. Mutilate her so she wouldn't be attractive to her husband anymore, maybe? Excuse me? Mutilate her so she wouldn't be attractive to her husband anymore? Bodily harm, which she was trying to perhaps affect bodily harm on the victim. But it still lends itself to the other inference, which was attempted aggravated battery, or aggravated battery. Thank you very much. The Court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. The Court stands in recess.